Christopher R. Kaup, Esq. (SBN 014820)
David M. Barlow (SBN 035812)

**TB TIFFANY & BOSCO**
P.A.

SEVENTH FLOOR CAMELBACK ESPLANADE II
2525 EAST CAMELBACK ROAD
PHOENIX, ARIZONA 85016
TELEPHONE: (602) 255-6000
FACSIMILE: (602) 255-0103
E-Mail: crk@tblaw.com, dmb@tblaw.com

*Attorneys for Creditor FTAS Legacy XI, LLC*

# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

In re:

**DAVID RULON ROBINSON,**

Debtor.

(Chapter 11 Proceeding)

Case No. 2:16-BK-05828-EPB

**MOTION TO DISMISS**

FTAS Legacy XI, LLC ("FTAS"), a creditor and party in interest in the above-captioned Bankruptcy Case, by and through undersigned counsel, moves to dismiss or convert the bankruptcy case filed by Debtor David Rulon Robinson ("Debtor"). The Debtor defaulted under material terms of his Chapter 11 Plan of Reorganization (the "Plan") by failing to pay $108,212.50 as of January 22, 2024 as required under the terms of the Plan. Accordingly, this Bankruptcy Case must be dismissed or converted. This Motion is supported by the following Memorandum of Point and Authorities and the documents attached hereto as exhibits.

///

///

///

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. Relevant Facts

### A. Procedural Background

On May 23, 2016, Debtor filed an individual chapter 11 bankruptcy. (Doc. 1). On June 7, 2016, this Court entered an order dismissing the case due to Debtor's failure to file a Credit Counseling Certificate as required by Fed. R. Bankr. P. 1007(b)(3), Debtor's failure to timely file schedules and statements required by Fed. R. Bankr. P. 1007, Debtor's failure to timely file a Statement of Your Current Monthly income and any additional forms as required by Fed. R. Bankr. P. 1007 and Debtor's failure to file a Declaration of Evidence of Employer's Payments as required by Local Rule 1007-1. (Doc. 9). On June 14, 2016, this Court entered an Order Reinstating Debtor's case. (Doc. 28). On December 16, 2016, FTAS filed its proof of secured claim in the amount of $568,106.36.

On December 13, 2016, the U.S. Trustee filed a Motion to Dismiss the bankruptcy due to Debtor's failure to timely file monthly operating reports, Debtor's failure to remain current on his quarterly fee payments, Debtor's failure to file his post-petition tax returns and Debtor's failure to file a chapter 11 plan. (Doc. 46). On December 20, 2017, the U.S. Trustee filed a notice of payment and agreed to the entry of an order confirming Debtor's plan of reorganization. (Doc. 119).

On October 3, 2018, the U.S. Trustee filed another Motion to Dismiss the bankruptcy due to Debtor's failure to submit an order confirming the Debtor's plan and Debtor's repeated failure to file any monthly operating reports, pay any quarterly fees

and file his post-petition tax returns. (Doc. 125). On December 29, 2018, this Court entered an Order Confirming Debtor's Chapter 11 Plan. (Doc. 160).

On April 15, 2024, the U.S. Trustee filed a Notice of Non Compliance and stated that the Debtor was delinquent on his quarterly fees, that no quarterly fees have been paid post-confirmation and that no post-confirmation reports have been filed. (Doc. 162).

**B. Debtor's Plan**

On December 14, 2016, Debtor filed his Plan of Reorganization ("Plan"). (Doc. 55). On September 19, 2017, Debtor filed its Stipulation Regarding Proposed Chapter 11 Plan of Reorganization Regarding Treatment of Second Mortgage: 4122 E. McClellan #8, Mesa Az ("Stipulation"). (Doc. 91).

The Stipulation provided that FTAS' secured claim would be bifurcated under the Debtor's Plan. (*Id.* at 2:7 – 11). The Stipulation specifically provided, "[FTAS] will be given an unsecured claim in the amount of $468,106.36 ("Unsecured Claim"). This amount will only be avoided upon the completion of Debtor's Chapter 11 Plan Payments, receipt of a discharge, and the entry of a final decree." (*Id*. at 2:9 – 11). The Stipulation further provided that FTAS would receive a secured claim in the amount of $100,000 to be paid over a five year period beginning the month after confirmation at 4.5% interest per annum with $635 per month payments. (*Id*. at 2:12 – 14).

The Stipulation also required FTAS to provide a 30-day notice of default and did not require FTAS to release its lien until Debtor received his discharge. (*Id*. at 2:16 – 17). A discharge has never been entered in this case. The terms of the Stipulation

were contingent upon substantial consummation of Debtor's Plan. (*Id*. at 2:20 – 21). The remaining balance would be due in full 61 months after confirmation. (*Id*. at 2:14 – 15). On November 7, 2017, this Court entered an Order Approving the Stipulation. (Doc. 110).

On December 29, 2018, this Court entered an Order Confirming Debtor's Chapter 11 Plan. (Doc. 160). Debtor's Plan provided that, "[i]f the Debtors are unable to perform the terms and conditions of this Plan, then they will be in default[ ]" and "[a]ny Creditor may seek to enforce the Plan. Before doing so, however, a Creditor must first provide notice to the Debtors specifying the nature of the alleged default and providing the Debtors a 30-day period to cure such default." (Doc. 160 at 11:27 – 12:2).

**C. Debtor's Defaults**

The Debtor failed to make the regular monthly payments required by the Plan beginning on July, 2023 through December, 2024, and the final balloon payment due in January of 2024.

On January 24, 2024, FTAS sent Debtor a Notice of Default ("Notice of Default"). **Exhibit A**, Notice of Default. The Notice of Default informed Debtor that he failed to make all monthly payments as required by the Stipulation including the aggregate remaining balance due on January 22, 2024 as required under the Stipulation. *Id*. As of January 24, 2024, the outstanding amount due and owing was $108,212.50, with per diem interest of $12.50. *Id*. The aggregate amount of the debt owed by the Debtors as of July 1, 2024 was $110,527.25.

Debtor has not responded to FTAS' Notice of Default or otherwise cured the defaults as of the date of filing this Motion.

On April 10, 2024, FTAS noticed a trustee's sale. FTAS has rescheduled that sale until August 23, 2024.

## II. Law

### A. The Debtor Has Materially Defaulted on the Plan and This Case Should be Dismissed.

Section 1112(b) governs conversion or dismissal of a chapter 11 case and provides a non-exhaustive list of grounds that constitute "cause" for conversion or dismissal. 11 U.S.C. § 1112. "[Section 1112(b)] provides that the bankruptcy court 'shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause.'" *In re Baroni*, 36 F.4th 958, 965 (9th Cir. 2022). "[T]he party seeking relief under Section 1112(b)(1) has the initial burden of persuasion to establish that cause exists for granting such relief." *Id*. at 966. "'Cause' is a defined term, and it includes a "material default by the debtor with respect to a confirmed plan." *Id*. (citing 11 U.S.C. § 1112(b)(4)(N)).

"[G]iven the substantial effect that a confirm Chapter 11 plan may have on creditors, an individual debtor generally may not receive a discharge under Chapter 11 – even after a plan is confirmed – until the debtor has made all creditor payments contemplated in the confirmed Chapter 11 plan." *Id*. at 967 (citing 11 U.S.C. § 1141(d)(5)(A)). "Ensuring that payments to creditors are made is essential to effectuating the reorganization plan and accomplishing Chapter 11's policy objections." *Id*. "Thus, we agree that failing to make required plan payments can be a material

default of the plan, even if the debtor has made payments for an extended period before the default or taken other significant steps to perform the plan." *Id*. (citing *In re Greenfield Drive Storage Park*, 207 B.R. 913, 916 – 17 (9th Cir. BAP 1997) (finding material default where debtor ceased making plan payments after doing so for several years and rejecting debtor's argument that "there could be no material default because there was a 'substantial consummation' under the plan") and *In re Warren*, 2015 WL 3407244, at *5 (9th Cir. BAP 2015) (finding material default where debtors paid some but not all creditors and rejecting debtors' argument that they had 'substantially complied with the payment terms of the Plan'"). "[F]actors relevant in determining whether missed payments are a material default of the plan include the number of missed payments, the number of aggrieved creditors, and how long the default occurred." *Id*.

Here, it is undisputed that Debtor defaulted under the terms of the Plan by failing to make the final balloon payment to FTAS as required by the Stipulation and Confirmation Order. It is also undisputed that Debtor's default was material. As of the date of filing of this Motion, Debtor has not responded to or otherwise cured the default asserted in the Notice of Default.

"[I]f cause is established, the decision whether to convert or dismiss the case falls within the sound discretion of the court." *In re Sullivan*, 522 B.R. 604, 612 (9th Cir. BAP 2014). "If there is cause to dismiss or convert, the court must also: '(1) decide whether dismissal, conversion, or the appointment of a trustee or examiner is in the best interests of creditors and the estate; and (2) identify whether there are unusual

circumstances that establish that dismissal or conversion is not in the best interests of creditors and the estate.'" *In re Premier Golf Properties, LP*, 564 B.R. 710, 723 (Bankr. S.D. Cal. 2016) (citations omitted). "Courts consider many factors to determine what is in the best interest of creditors and the estate, including:

> '(1) Whether some creditors received preferential payments, and whether equality of distribution would be better served by conversion rather than dismissal; (2) whether there would be a loss of rights granted in the case if it were dismissed rather than converted; (3) whether the debtor would simply file a further case upon dismissal; (4) the ability of the trustee in a chapter 7 case to reach assets for the benefit of creditors; (5) in assessing the interest of the estate, whether conversion or dismissal would maximize the estate's value as an economic enterprise; (6) whether any remaining issues would be better resolved outside the bankruptcy forum; (7) whether the estate consists of a 'single asset'; (8) whether the debtor has engaged in misconduct and whether creditors are in need of a chapter 7 case to protect their interests; (9) whether a plan has been confirmed and whether any property remains in the estate to be administered; and (10) whether the appointment of a trustee is desirable to supervise the estate and address possible environmental and safety concerns.'"

*Id*. (quoting *In re Hoyle*, 2013 WL 210254, at * 15 (Bankr. D. Idaho 2013)).

Here, FTAS is unaware of whether several of these factors exist or weigh in favor of either conversion or dismissal. First, FTAS is unaware of whether any creditors received preferential payments and whether equality of distribution would be better served by conversion. Similarly, FTAS is unaware of whether there would be a loss of rights if the case was dismissed rather than converted or whether Debtor would simply file another case upon dismissal. FTAS is unaware of any assets that a chapter 7 trustee would be able to reach if this case was converted, but asserts that a chapter 7 trustee would not be able to reach the asset that secures FTAS' claim. FTAS is also unaware of whether conversion or dismissal would maximize the estate's value. FTAS is unaware of any misconduct on the part of the Debtor aside from Debtor's repeated failures to

comply with the U.S. Trustee's administrative guidelines, file required reports and make quarterly payments to the U.S. Trustee. And an appointment of a trustee is not necessary to supervise the estate and address possible environmental and safety concerns.

Significantly, there are no assets in this case to be administered by a Chapter 7 Trustee because all of that property reverted to the Debtors by operation of Section of the Plan. Section 7 of the Plan ("Revesting") provided as follows:

> Except as provided for in the Plan or in the Confirmation Order, on the Effective Date the Debtors shall be vested with all of the property of the State (sic) free and clear of all Claims, liens, charges and other interests of Creditors arising prior to the Petition Date.

Plan, at page 13, lns. 22 -24. As a result, the assets owned by Mr. Robinson are no longer property of the Bankruptcy Estate and there would be nothing for a Trustee to administer.

Moreover, Debtor's Plan only addressed the property located at 4122 E. McLellan, Unit 8, Mesa, Arizona 85205. It appears that the only property to be administered is that real property and FTAS contends that resolving the issue with respect to FTAS' claim would be better resolved outside of bankruptcy. If this case were converted, FTAS' foreclosure sale may be delayed even though there are no assets to administer after conversion. Based on the analysis of the factors identified above, dismissal, rather than conversion, is in the best interests of the creditors.

**B.     The Automatic Stay Terminated and is Not Applicable in This Case.**

Section 7 of the Plan ("Revesting") provided as follows:

> Except as provided for in the Plan or in the Confirmation Order, on the Effective Date the Debtors shall be vested with all of the property of the State (sic) free and clear of all Claims, liens, charges and other interests of Creditors arising prior to the Petition Date.

Plan, at page 13, lns. 22-24. As a result, the assets owned by Mr. Robinson are no longer property of the Bankruptcy Estate.

As the Court is aware, the automatic stay against property of the estate expires in a on the date that property "is no longer property of the estate." *See* 11 U.S.C. Section 362(c)(1). Accordingly, the automatic stay imposed in the above captioned case terminated as a result of the revesting provision of the Plan.

**III. Conclusion**

For the reasons set forth above, FTAS requests that this Court enter an order dismissing Debtor's bankruptcy because of Debtor's material default under the terms of the Plan. Debtor failed to pay the balance due on FTAS' claim as required under the express terms of the Plan and failed to cure such material default within the 30-day cure period prescribed by the Plan. Conversion of Debtor's case to chapter 7 would serve no purpose and is therefore not in the best interests of the creditors. Dismissal is warranted given Debtor's material default after an unnecessarily prolonged bankruptcy case that involved repeated instances of Debtor failing to comply with the most basic requirements under the Code. Finally, the order entered by this Court should provide that the entire amount owed to FTAS, $568,106.36, remains due and owing because no discharge has been entered in the Case and the Debtor defaulted on the Plan.

RESPECTFULLY SUBMITTED this 26 day of July, 2024.

**TIFFANY & BOSCO, P.A.**

By: /s/ Christopher R. Kaup, 014820
Christopher R. Kaup, Esq.

|   |   |
|---|---|
| 1 | David Barlow, Esq. |
| 2 | Seventh Floor Camelback Esplanade II |
|   | 2525 East Camelback Road |
| 3 | Phoenix, Arizona 85016-4237 |
|   | *Attorneys for Creditor FTAS Legacy XI,* |
| 4 | *LLC* |

6  **FOREGOING** electronically filed with the Clerk of United States Bankruptcy Court this 26th day of July, 2024. And copy served by the Court's electronic notification system this same day.

10  /s/ *Bianca Ochoa*
Bianca Ochoa, Legal Assistant

# EXHIBIT A

# JOHNSON LAW OFFICE, PLC
2812 N. Norwalk, Suite 106
Mesa, Arizona 85215
408-347-0888
david@johnsonlawaz.com

January 24, 2024

<u>VIA CERTIFIED MAIL</u>

David R. Robinson
Chellee C. Robinson
4122 E. McLellan, #8
Mesa, AZ 85205

    Re:    **Notice of Default on Loan Secured by Deed of Trust and Fixture Filing on Property Located at 4122 East McLellan, Unit 8, Mesa, AZ 85205**

Dear Mr. and Mrs. Robinson:

    This office represents FTAS Legacy XI, LLC, an Arizona limited liability company ("Lender"), which is the current owner and holder of the loan in the original principal amount of $950,800.00 (the "Loan") made by National Bank of Arizona, a national banking association, to Manstone Countertops LLC ("Borrower"). The name and address of the original creditor is National Bank of Arizona, Mesa Main Office, 1119 West Southern Avenue, Mesa, Arizona 85210.

    The Loan is evidenced by the Promissory Note executed by Borrower dated June 2, 2005, in the principal amount of $950,800.00 (the "Note"). The Loan and Note are secured by, among other things, the Deed of Trust and Fixture Filing executed by David R. Robinson ("Debtor") and Shelly C. Robinson dated June 2, 2005, and recorded as Instrument No. 2005-0771214, Official Records of Maricopa County Recorder, and thereafter assigned to Lender (the "Deed of Trust"). The Deed of Trust is a valid lien on the real property and improvements located at 4122 East McLellan, Unit 8, Mesa, Arizona 85205 (the "Property").

    Debtor filed a voluntary petition for protection under Chapter 11 of the Bankruptcy Code, and Lender and Debtor entered into the Stipulation Regarding Proposed Chapter 11 Plan of Reorganization Regarding Treatment of Second Mortgage approved by Order dated November 9, 2017, In Re: David Robinson, Debtor-in-Possession, Case No: 2:16-BK-05828-EPB in the United States Bankruptcy Court for the District of Arizona (the "Stipulation"). Pursuant to the Stipulation, Debtor was obligated, among other things, to pay to Lender a secured claim in the amount of $100,000.00, with interest thereon at the rate of 4.5% per annum, in monthly payments of $634.00 over the five-year period beginning January 22, 2019 (the month after confirmation), with the balance due in full on January 22, 2024 (Sixty-one months after the month of confirmation).

    This letter shall constitute notice of default under the terms of the Stipulation. The default includes the failure to make all the monthly payments as shown on the attached schedule of payments and the failure to pay the balance due on January 22, 2024 as required in the Stipulation. As of January 22, 2024, the outstanding amount due and owing under the Stipulation is $108,212.50, with per diem interest of $12.50, as set forth on the attached schedule. The

specification of the above defaults does not in any way waive Lender's rights to declare any other or additional defaults which may exist as of the date of this letter.

     Formal demand is hereby made for payment of the foregoing total amount on or before thirty (30) days after your receipt of this letter. This payment must be in the form of a cashier's check, certified check, or money order made payable to Lender and delivered in a timely manner to Lender at 2812 North Norwalk, Suite 105, Mesa, Arizona 85215.

     If the total amount set forth above is not received by Lender on or before thirty (30) days after your receipt of this letter, all outstanding amounts under the Loan shall be immediately due and payable in accordance with the terms of the Note and Deed of Trust, and Lender may exercise any and all rights and remedies available, including, without limitation, foreclosure of the Deed of Trust on the Property, at such time and in whatever order as Lender may elect.

     This letter shall also serve as notice that despite any past acceptance of late or partial installment payments, any prior reinstatement, any prior negotiations, or any other actual or implied forbearance of any nature by Lender or its predecessors in interest, time is of the essence of this notification.

Very truly yours,

David Johnson

Cc:    FTAS Legacy XI, LLC

**Fair Debt Collection Practices Act Notice**

**This is an attempt to collect a debt. Any information obtained will be used for that purpose. Unless you dispute the validity of the debt, or any portion thereof, within 30 days of receipt of this letter, it will be assumed to be valid. If the dispute is received in writing, debt verification or a copy of the judgment will be obtained and mailed to you. The name and address of the original creditor if different than the current creditor will also be provided to you if requested in writing within 30 days of receipt of this letter. Please be advised that this communication is from a debt collector.**